# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-35** |
| **RAINER WITTICH** | **SECTION: "G"(4)** |

## ORDER AND REASONS

In this criminal action, the United States has accused defendants Rainer Wittich and The Brinson Company ("TBC") of willfully and for purposes of financial gain: (1) conspiring[1] to infringe a copyright,[2] circumventing a technological measure that effectively controlled access to work protected under Title 17 of the United States Code,[3] and trafficking in a technology designed and produced to circumvent a technological measure that effectively controlled access to a work protected under Title 17 of the United States Code ("Count 1");[4] (2) infringing copyrighted work, ("Counts 2–3");[5] and (3) trafficking in technology designed to circumvent copyright protection systems ("Count 4").[6] Pending before the Court is Defendants Rainer Wittich and the Brinson Company's "Motion to Dismiss."[7] Having considered the pending motions, the memoranda in

---

[1] Rec. Doc. 20 at pp. 3–8 (citing 18 U.S.C. § 371).

[2] *Id.* at p. 4 (citing 17 U.S.C. § 506(a)(1)(A), 18 U.S.C. § 2319(b)(1)).

[3] *Id.* (citing 17 U.S.C. § 1201(a)(2)(A), 17 U.S.C. § 1204(a)(1)).

[4] *Id.* (citing 17 U.S.C. § 1201(a)(2)(A); 17 U.S.C. § 1204(a)(1)).

[5] *Id.* at p. 9 (citing 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1)–(2)).

[6] *Id.* at pp. 9–10 (citing 17 U.S.C. § 1201(a)(2)(A), 17 U.S.C. § 1204(a)(1) and 18 U.S.C. § 2).

[7] Rec. Doc. 36.

support, the memoranda in opposition, and the applicable law, the Court will deny the pending

motion.

## I. Background

On February 13, 2014, a grand jury indicted Wittich and TBC on charges of conspiracy,

copyright infringement, trafficking in technology designed to circumvent copyright protection

systems, and circumventing a technological measure that protects a copyrighted work.[8] On May 29,

2014, a grand jury authorized a superseding indictment accusing Wittich and TBC of: (1)

conspiring[9] to infringe a copyright,[10] circumvent a technological measure that effectively controlled

access to work protected under Title 17 of the United States Code,[11] and traffic in a technology

designed and produced to circumvent a technological measure that effectively controlled access to

a work protected under Title 17 of the United States Code ("Count 1");[12] (2) infringing a copyrighted

work, ("Counts 2–3");[13] and (3) trafficking in technology designed to circumvent copyright

protection systems ("Count 4").[14] Wittich and TBC were arraigned on June 9, 2014.[15] On July 31,

---

[8] Rec. Doc. 1.

[9] Rec. Doc. 20 at pp. 3–8 (citing 18 U.S.C. § 371).

[10] *Id.* at p. 4 (citing 17 U.S.C. § 506(a)(1)(A), 18 U.S.C. § 2319(b)(1)).

[11] *Id.* (citing 17 U.S.C. § 1201(a)(2)(A), 17 U.S.C. § 1204(a)(1)).

[12] *Id.* (citing 17 U.S.C. § 1201(a)(2)(A); 17 U.S.C. § 1204(a)(1)).

[13] *Id.* at p. 9 (citing 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1)–(2)).

[14] *Id.* at pp. 9–10 (citing 17 U.S.C. § 1201(a)(2)(A), 17 U.S.C. § 1204(a)(1) and 18 U.S.C. § 2).

[15] *See* Rec. Doc. 25.

2014, Wittich and TBC filed the instant motion to dismiss the superseding indictment.[16] The Court heard oral argument on the motion on August 21, 2014, and ordered the parties to provide supplemental briefing on the issues raised by the motion.[17] The parties timely filed supplemental briefs.[18]

## II. Parties' Arguments

### A.    Wittich and TBC's "Motion to Dismiss"

In their motion to dismiss the indictment,  Wittich and TBC argue: (1) "the [G]overnment has not properly alleged the  copyright at issue here"; (2) even if the [G]overnment has "properly pled the existence of a copyright, there is no evidence that this copyright was registered with the Copyright Office," which is a "prerequisite to a copyright infringement claim;" and (3) assuming that the government can overcome the "hurdles" just described, "the copyright statutory scheme is vague as applied to these defendants, and therefore, should be rendered unconstitutional."[19]

In support of their argument that the government has not properly alleged a copyright, Wittich and TBC contend that the superseding indictment states the statutory elements of a copyright infringement offense, and refers to "proprietary software" and "confidential, proprietary trade secret information," without alleging that any of the purportedly protected works were actually copyrighted.[20]

---

[16] Rec. Doc. 36.

[17] *See* Rec. Doc. 49.

[18] *See* Rec. Doc. 50; 52; Rec. Doc. 53.

[19] Rec. Doc. 36.

[20] *Id.* at pp. 8–9.

Wittich and TBC also maintain that there is no evidence that this copyright was registered with the Copyright Office.[21] Pointing to statutes authorizing civil enforcement of copyright infringement claims, Wittich and TBC contend that the existence of a registered copyright is a necessary prerequisite to maintain a civil action under an infringement theory.[22] Until 2008, Wittich and TBC maintain, the statutory provision requiring registration made no distinction between civil and criminal actions.[23]   Wittich and TBC allege that, although Congress did not provide an analogous provision requiring registration in criminal proceedings, "numerous courts have noted the lock step linkage between civil and criminal copyright principles."[24] Accordingly, Wittich and TBC contend, the registration requirement should apply in the criminal context, despite a paucity of case law on point.[25] In support of this proposition, Wittich and TBC cite *U.S. v. Backer* and *U.S. v. Beltran*.[26] According to Wittich and TBC, the court in *Backer* reasoned that the question of registration is "of vital importance," and that registration was required in both civil and criminal actions, while the court in *Beltran* noted that it "appeared" that registration was required in both civil and criminal actions.[27]

---

[21] *Id.* at p. 9.

[22] *Id.* at pp. 9–10 (citing 17 U.S.C. § 411(a)).

[23] *Id.* at p. 10 Wittich and TBC also point out that the Government alleges that his conduct began "not later than 2005." *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* (citing *United States v. Backer*, 134 F.2d 533, 535 (2d Cir. 1943); *United States v. Beltran*, 503 F.3d 1 (1st Cir. 2007)).

[27] *Id.*

Wittich and TBC argue that the rule of lenity supports applying the registration requirement in the criminal context, since the fact that Congress stated that the registration requirement applied in civil enforcement proceedings, but failed to state that it did *not* apply in criminal proceedings, renders the statute unclear and ambiguous.[28] Wittich and TBC point, apparently by analogy, to patent and trademark statutes.[29]  In the trademark context, Wittich and TBC contend that registration is a necessary prerequisite to criminal liability, whereas in the patent context, registration is a necessary prerequisite to civil liability.[30] Wittich and TBC argue that since copyright infringement, like patent and trademark infringement, is *malum prohibitum*—an act that is illegal "because a statute makes it so," rather than because it is "naturally evil as adjudged by the sense of a civilized community"—individuals "have no way to know if their conduct is prohibited" in the absence of a registration requirement.[31]

Finally, Wittich and TBC assert that if the Government has properly alleged a copyright, and need not allege a *registered* copyright, the statute is unconstitutional as applied to his prosecution, because it does not give him "fair notice of what behavior is proscribed."[32] According to Wittich and TBC, courts adjudicating civil copyright infringement cases have recognized that the purpose of the

---

[28] *Id.* at p. 12.

[29] *Id.* at p. 13.

[30] *Id.*

[31] *Id.* at pp. 13–14.

[32] *Id.* at p. 15.

copyright registration requirement is to provide individuals with notice.[33] In the present case, notice is "even more necessary, due to the potential loss of liberty in a criminal prosecution."[34]

## B.    The Government's Opposition

In opposition, the Government argues that (1) "[t]he indictment clearly and sufficiently alleges the existence of a copyright"[35]; (2) "[c]opyright registration is not required for criminal prosecution";[36] and (3) "[t]he criminal copyright infringement statute is not unconstitutionally vague," because it requires that a defendant possess the *mens rea* of "willfulness"—in other words, to commit an "intentional violation of a known duty."[37]

The Government contends that the indictment clearly and sufficiently alleges the existence of a copyright because it states that Wittich and TBC infringed on the proprietary SDS software.[38] According to the government, the indictment "clearly tracks the elements of the statutes charged and also goes well beyond that, providing an extensive set of factual allegations which make very clear the government's theory of prosecution," thereby preventing Wittich and TBC from alleging any prejudice arising from the wording of the indictment.[39]

---

[33] *Id.*

[34] *Id.*

[35] Rec. Doc. 40 at p. 5.

[36] *Id.* at p. 9.

[37] *Id.* at p. 13.

[38] *Id.* at p. 7.

[39] *Id.*

The Government next contends that registration is not required for copyright protection or copyright prosecution, because the Copyright Act provides that copyright inheres from the creation of a work, and expressly states that registration is only a prerequisite for civil actions.[40] According to the Government, since the plain language of the statute is clear, the rule of lenity does not counsel in favor of applying the registration requirement in this criminal case.[41] In further support of this proposition, the Government cites the legislative history associated with the 2008 amendment to the civil enforcement provision of the Copyright Act.[42] According to the Government, the 2008 amendment merely clarified an already-existing rule that registration was not required in the criminal context.[43] The Government also contends that *Backer* and *Beltran*, cited by Wittich and TBC, are inapposite because they address the statutory scheme in effect before the 2008 amendments.[44]

Finally, the Government argues that the criminal copyright statute is not unconstitutionally vague, because it requires willful violation—that is, the "voluntary intentional violation of a known

---

[40] *Id.* at pp. 8–9.

[41] *Id.* at pp. 9; 12–13.

[42] *Id.* at p. 10 (citing H. Rep. No. 110-617 at 39 (2008)).

[43] *Id.* at p. 11.

[44] *Id.* at p. 13 n. 9.

legal duty."[45] Therefore, the Government asserts, the criminal copyright infringement statute protects individuals from conviction if those individuals did not know that their conduct was unlawful.[46]

## C.    Wittich and TBC's Reply Brief in Support of Dismissal

In their reply brief in further support of the pending motion, Wittich and TBC contend that the Government has not shown that the SDS software was copyrighted, and cannot point to any case in which a court sustained an application of the criminal copyright statutes to a work that was not registered in the United States.[47] Indeed, Wittich and TBC argue, the indictment does not allege that the works at issue here were "copyrighted" at all.[48] Wittich and TBC further contend that although the *Beltran* court "stated in dicta that the registration requirement appears to apply only in civil cases," the parties in that case "stipulated to the certificates of registration."[49]

## D.    Wittich and TBC's Supplemental Memorandum in Support of Dismissal

In their supplemental memorandum in support of the pending motion, Wittich and TBC assert that the criminal copyright statute is unconstitutionally vague as applied in his case, because (1) when a work is not registered, the statute "fails to provide defendant with notice as to what conduct is proscribed"[50]; and (2) the lack of a registration requirement "strips the Copyright office

---

[45] *Id.* at pp. 13–14 (citing *Cheek v. U.S.*, 498 U.S. 192, 200 (1991)).

[46] *Id.* at p. 15. The Government also argues that Wittich and TBC's references to trademark and patent enforcement regimes are inapposite, because copyrights, unlike trademarks and patents, "inure automatically and confer protection from the moment a work is created." *Id.* at p. 13 n..9.

[47] Rec. Doc. 48 at p. 2.

[48] *Id.* at p. 3.

[49] *Id.* (citing *Beltran*, 503 F.3d 1 (1st Cir. 2007)).

[50] Rec. Doc. 52 at p. 4.

of its primary function to determine which works are subject to protection and gives the [D]epartment of [J]ustice unfettered discretion as to which works are entitled to copyright protection."[51]

Wittich and TBC contend that the statute fails to provide defendants with notice as to what conduct is proscribed even in light of the requirement that infringement be willful, because "without registration, there is no way for anyone to definitively know if a work is subject to copyright protection or not, because the work has not been presented to the United States Copyright Office for consideration."[52] According to Wittich and TBC, the statute thus gives the Department of Justice discretion to pursue criminal penalties against individuals who allegedly infringe upon works that might not be "ripe for copyright protection."[53] In the present case, Wittich and TBC argue, the Department of Justice has determined "on its own" that the works at issue are subject to copyright protection, a decision that is "arbitrary and lies at the heart of the most basic notions of due process required under the constitution."[54] Wittich and TBC argue that the works  at issue here were not registered, and that Mercedes Benz did not provide Wittich and TBC with any notice of infringement.[55] Therefore, permitting the present case to proceed "allows the [D]epartment of [J]ustice to have more rights than the actual owner of a work would have in the civil arena," permitting the Department of Justice, "on its own, to choose any work that it felt was protected by

---

[51] *Id.* at p. 5.

[52] *Id.* at p. 4.

[53] *Id.* at p. 5.

[54] *Id.*

[55] *Id.*

the copyright laws of this country without any proceedings or determination by the United States Copyright Office."[56] According to Wittich and TBC, "[s]uch application provides no notice and no guidance to law enforcement."[57]

**E.     The Government's Supplemental Memorandum in Opposition to Dismissal**

In its supplemental memorandum in opposition to dismissal, the Government argues that: (1) "[t]o decide an 'as applied' challenge, the Court must consider the specific facts involved in Defendants' case"[58]  (2) Wittich and TBC's "as applied" challenge "should not be resolved without a factual record, but, in any event, fails based upon the facts" alleged in the indictment[59]; (3) "to the extent [D]efendants' argument is reframed as a 'facial' challenge, the argument fails under the plain language of the Copyright Act"[60]; (4) the existence of a copyrighted work, and not registration, provides the requisite notice under the statute;[61] and (5) the fact that a statutory definition, rather than the Copyright Office, determines existence of a copyright does not mean that the DOJ usurps the Copyright Office's role when prosecuting criminal copyright infringement, and does not change the character of the underlying illegal conduct.

In support of the argument that the Court must consider the specific facts involved in Wittich and TBC's case to decide an as-applied challenge, the Government argues that although Fifth Circuit

---

[56] *Id.* at pp. 5–6.

[57] *Id.* at p. 6.

[58] Rec. Doc. 53 at p.4.

[59] *Id.* at p. 7.

[60] *Id.* at p. 9.

[61] *Id.* at pp. 12–13.

case law permits the Court to "look beyond the four corners of the indictment to find facts relevant to deciding a pretrial motion," the Court's inquiry should normally be limited to the facts alleged in the indictment, which the Court must take as true.[62]

According to the Government, Wittich and TBC's "as applied" challenge should not be resolved without a factual record, because without a factual record, there is "no way" for the Court to determine "whether the absence of copyright registration makes the statute unconstitutionally vague."[63] And "regardless of whether Mercedes Benz registered a copyright in the SDS software," the Government argues, "the Superseding Indictment alleges facts sufficient to establish that (1) defendants had fair notice their conduct was prohibited and (2) they willfully violated the law."[64] In support of this contention, the Government points to "not fewer than four instances in which Wittich was made aware of, discussed, or actively sought to keep secret from Mercedes Benz and federal investigators the illegality of their role in manufacturing and selling copyright-infringing SDS software."[65] The Government argues that the jury, and not the Court, should decide whether the indictment's factual allegations are sufficient to find that Wittich and TBC had the *mens rea* necessary to be guilty of the conduct charged.[66]

The Government argues that the plain language of the Copyright Act forecloses any potential "facial" challenge, since the statute provides clear definitions of copyrighted work and actionable

---

[62] *Id.* at p. 6.

[63] *Id.* at p. 7.

[64] *Id.*

[65] *Id.*

[66] *Id.* at p. 9.

copyright infringement, and the Court may (and should) consider the legislative history supporting the Government's contention that Congress intended to permit the Government to prosecute the infringement of unregistered copyrights.[67]

The Government also states that Wittich and TBC's argument that the copyright infringement statute is vague "as applied" because it failed to provide them with adequate notice that they could be prosecuted for infringing an unregistered copyright is "wrong," because the Copyright Act defines works that can be copyrighted, and neither its definition, nor the criminal copyright statute, requires registration.[68] In any event, the Government argues, the prosecution still must prove the existence of a copyright beyond a reasonable doubt at trial, and Wittich and TBC may at that time argue that the lack of registration rendered them unaware of the copyright.[69] Further, the Government argues, the fact that the statute requires that infringement be willful means that Wittich and TBC's vagueness challenge faces an "especially strict test."[70] The government argues that the criminal copyright statute "states plainly that it proscribes the willful infringement of a 'copyright,'" not a registered copyright.[71] Thus, the Government argues, "[w]hether defendants had notice of the particular copyright the Superseding Indictment alleges they infringed, that in Mercedes' SDS software, is irrelevant."[72] Instead, the Government argues, "what is relevant is whether Mercedes's

---

[67] *Id.* at pp. 10–11.

[68] *Id.* at p. 12.

[69] *Id.* at p. 12–13.

[70] *Id.* at p. 13.

[71] *Id.*

[72] *Id.*

SDS software is copyright protected pursuant to Section 102 [of the Copyright Act], and, if so, whether the defendants knew they were breaking the law when they infringed the copyright-protection work."[73]

Finally, the Government contends that, since the Copyright Act, and not the Department of Justice or the Copyright Office, determines the existence of a copyright, Wittich and TBC's argument that the Department of Justice will be the "sole arbiter of which unregistered works are deemed protected" is "without merit."[74] The Government argues that the Copyright Office, even in cases of registration, does not conclusively determine the existence of a copyright.[75] In the context of criminal prosecutions, the Government argues, the Department of Justice "can only allege the existence of a copyright in an indictment, which is then presented to a grand jury, and an unregistered copyright has to meet the same legal definition as a registered one."[76] According to the Government, if the work has not been registered at the time of trial, then the Department of Justice "has to prove the existence of the copyright by other means."[77] The Government argues that "it is no surprise that [the Department of Justice] . . . does not (and cannot) institute prosecution for every copyright infringer," although its decision "whether, and when to pursue a prosecution is the result of innumerable factors, including the egregiousness of the conduct," its decision "to prosecute some

---

[73] *Id.*

[74] *Id.* at p. 14.

[75] *Id.*

[76] *Id.* at p. 14.

[77] *Id.* at p. 15.

conduct, and not to prosecute other conduct, is in no way an indication that uncharged conduct is either not criminal or government-sanctioned."[78]

### III. Law and Analysis

**A.      Standard on a Pre-Trial Motion to Dismiss an Indictment**

Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Under Federal Rule of Criminal Procedure 12(b)(3)(B), "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." The Fifth Circuit, in *United States v. Fontenot*, instructed that where a defendant seeks dismissal of an indictment on the basis that it fails to state an offense, the Court "is required to take the allegations of the indictment as true and to determine whether an offense has been stated."[79] The court in *Fontenot* further provided that "[t]he propriety of granting" a pre-trial motion to dismiss an indictment "is by–and–large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact."[80] In situations where "a question of law is involved," the court stated, "consideration of the motion is generally proper."[81]

---

[78] *Id.*

[79] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citing *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

[80] *Id.* (citing *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) ("In this circuit, the propriety of granting a motion to dismiss an indictment under Fed. R.Crim. P. 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'") (citations omitted)).

[81] *Id.*

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In *United States v. Devoll*, the United States Court of Appeals for the Fifth Circuit rejected the defendant's argument that his indictment failed to state an offense because it did not recite one of the elements of an offense of which he was convicted.[82] Reasoning that "[e]ach challenged count" of the indictment "specifically refer[red]" to the statute setting forth the offense, the court stated that "the law does not compel a ritual of words[,]" and that "the validity of an indictment is governed by practical, not technical considerations."[83] Thus, the court held, "the appropriate test in this instance is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards."[84]

In *United States v. Ratcliff*, the United States Court of Appeals for the Fifth Circuit, reviewing and affirming the district court's dismissal of an indictment and applying Federal Rule of Criminal Procedure 7(c)(1), provided  that "an indictment is sufficient if it "[1] alleges every element of the crime charged and [2] in such a way as to enable the accused to prepare his defense and [3] to allow the accused to invoke the double jeopardy clause in any subsequent proceeding."[85]

---

[82] *United States v. Devoll*, 39 F.3d 575, 578–79 (5th Cir. 1994).

[83] *Id.* at 579.

[84] *Id.*

[85] *United States v. Ratcliff*, 488 F.3d 639, 643 (5th Cir. 2005) (citing *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002). *See also United States v. Hamling*, 418 U.S. 87, 118 (1974) ("an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").

Addressing the first *Ratcliff* prong, the Fifth Circuit in *United States v. White* emphasized that the requirement that every element of the crime be alleged in the indictment "stems directly from one of the central purposes of an indictment: to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment."[86] The court in *White* further provided that, in considering whether the charged conduct is proscribed by a criminal statute, courts begin by reading the language of the indictment and the statutes at issue.[87]

Construing the second *Ratcliff* prong, the Fifth Circuit held, in *United States v. Nevers*, that an indictment must describe the specific facts and circumstances surrounding the offense in question in such a manner as to inform the defendant of the particular offense charged.[88]

Finally, addressing the third *Ratcliff* prong, the Fifth Circuit in *United States v. Hoover* considered whether an indictment's allegations were "sufficiently specific," and concluded that the indictment, in "allege[ing] each element of [the offense] that the government was required to prove," was sufficiently specific for double jeopardy purposes.[89]

Wittich and TBC do not dispute that the Superseding Indictment recites the elements of the offense. Rather, Wittich and TBC contend that in the Superseding Indictment, the Government has

---

[86] *United States v. White*, 258 F.3d 374, 381 (5th Cir. 2001).

[87] *Id.*

[88] *United States v. Nevers*, 7 F.3d 59, 63 (5th Cir. 1993).

[89] 467 F.3d 496, 499 (5th Cir. 2006) (citing *United States v. Crow*, 164 F.3d 229, 235 (5th Cir. 1999) ("Crow never claimed to be unaware of the government's theory of the case, the nature of the charges against him or that the indictment in some way failed to protect him from future prosecution. In addition, the indictment was sufficiently detailed and clearly presented the charges.")).

not properly alleged that the alleged copyrighted work was registered, which either renders the indictment deficient or requires the Court to find the criminal copyright statutes unconstitutionally vague as applied to Wittich and TBC.[90]

**B.      Whether the Superseding Indictment has Alleged Offenses**

Wittich and TBC argue that the Superseding Indictment does not "properly allege[] the copyright at issue here," since its allegations do not state that the material was "copyrighted."[91] Wittich and TBC further maintain that, even if the government has properly alleged a copyright, the copyright at issue was not registered, and registration is a prerequisite to a copyright infringement claim.[92] The Government, in response, contends that the Superseding Indictment "clearly and sufficiently alleges the existence of a copyright," and that registration is not required to sustain a charge of criminal copyright infringement.[93]

As the Fifth Circuit in *White* instructed, in analyzing whether the charged conduct is proscribed by a criminal statute, the Court must begin by reading the language of the indictment and the statutes at issue. The Superseding Indictment charges Wittich and TBC with: (1) willfully infringing a copyright "for purposes of commercial advantage and private financial gain," in violation of 17 U.S.C. § 506(a)(1)(A) (Counts 2 and 3);[94]   (2) willfully circumventing "a technological measure that effectively controlled access to a work protected under Title 17, United

---

[90] Rec. Doc. 36 at p. 9.

[91] *Id.* at p. 1; Rec. Doc. 48 at p. 2.

[92] Rec. Doc. 36 at p. 1–2; 9–12.

[93] Rec. Doc. 40 at pp. 5; 8–13.

[94] Rec. Doc. 20 at p. 4, 9.

States Code, in violation of Title 17, United States Code, Sections 1201(a)(1)(A) and 1204(a)(1)

(Count 4); and (3)  conspiracy, in violation of 18 U.S.C. § 371, and (4) with violating 18 U.S.C. §§

2, 2319(b)(1), and 2323(b).[95] Wittich and TBC urge the Court to dismiss the entire indictment, but

have only briefed whether the indictment fails to state an offense as to Counts 2, 3, and 4.

**1.     Charged Offenses Under 17 U.S.C. § 506(a)(1)(A) and 17 U.S.C. §§ 1201(a)(2)(A) and 1204(a)(1)**

The Superseding Indictment here accuses Wittich and TBC of violating 17 U.S.C.

§ 506(a)(1)(A). To allege a violation of 17 U.S.C. § 506(a)(1)(A),[96] the Government must state that

a defendant (1) willfully (2) infringed a copyright (3) for purposes of commercial advantage or

private financial gain. Wittich and TBC are also accused of violating 17 U.S.C. §§ 1201(a)(2)(A)

and 1204(a)(1). To allege a violation of 17 U.S.C. §§ 1201(a)(2)(A) and 1204(a)(1),[97] the

Government must state that a defendant (1) willfully and (2) for purposes of financial gain, (3)

manufacture[d], import[ed], offer[ed] to the public, provide[d], or otherwise traffic[ked] in any

technology, product, service, device, component, or part thereof, (4) that is primarily designed or

---

[95] 18 U.S.C. § 2 states that defendants who commit an offense against the United States, and those who aid, abet, counsel, command, induce, procure the commission of, or willfully cause another to commit an offense, shall be punishable as principals. 18 U.S.C. § 2319(b)(1) defines the punishments that applicable to defendants who violate 17 U.S.C. § 506(a)(1)(A). 18 U.S.C. § 2323(b) provides for forefeiture.

[96] 18 U.S.C. § 2319(b)(1)–(2) set forth the punishments that apply to violations of 17 U.S.C 506(a)(1)(A). Although Wittich urges the court to dismiss the entire indictment, the parties have not specifically briefed violations of this statute on the present motion.

[97] 18 U.S.C. § 2 provides that individuals who aid, abet, counsel, command, induce, procure, or "causes an act to be done which if directly performed by him or another" are punishable as principals. Although Wittich urges the Court to dismiss the entire indictment, the parties have not specifically briefed 18 U.S.C. § 2 on the present motion.

produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under Title 17 of the United States Code.[98]

Wittich and TBC do not dispute that the Government has recited the elements of an offense under these statutes, satisfying the first *Ratcliff* prong. Rather, Wittich and TBC dispute whether the government has alleged the existence of a copyright in the first instance, and whether the Government may initiate criminal infringement actions against individuals who infringe upon unregistered copyrights.

Under 17 U.S.C. § 102, copyright protection is defined as follows:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(1) literary works;

(2) musical works, including any accompanying words;

(3) dramatic works, including any accompanying music;

(4) pantomimes and choreographic works;

(5) pictorial, graphic, and sculptural works;

(6) motion pictures and other audiovisual works;

(7) sound recordings; and

(8) architectural works.

---

[98] 17 U.S.C. § 1204(a) supplies the "willfulness" *mens rea* required for criminal liability under 17 U.S.C. § 1201, while 17 U.S.C. § 1204(a)(1) provides the applicable punishments for violations of 17 U.S.C. § 1201.

> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

Under 17 U.S.C. § 408, registration is defined as "permissive," rather than mandatory:

> (a) Registration Permissive.--At any time during the subsistence of the first term of copyright in any published or unpublished work in which the copyright was secured before January 1, 1978, and during the subsistence of any copyright secured on or after that date, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection.

Therefore, while § 102 establishes the conditions under which a copyright may inhere, § 408 establishes that registration is not a prerequisite to copyright protection.  Further, under the plain language of §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1), registration is not required to establish a violation. Although Wittich and TBC urge the Court to apply the rule of lenity and interpose the language of 17 U.S.C. § 411[99]  into the criminal infringement statutes, the criminal infringement statutes are not ambiguous and therefore do not implicate the rule of lenity.

In the Superseding Indictment, the Government alleges that Wittich and TBC infringed "the proprietary software for Mercedes Star Diagnostic Systems,"  which is a "copyrighted work[]" that "Daimler AG produced" and installed on diagnostic equipment.[100] The Superseding Indictment further alleges that purchasers or lessees of the SDS system had to execute a license agreement

---

[99] The Copyright Act, as codified at 17 U.S.C. § 411, provides for "registration and civil infringement actions." At § 411(a), it states that "Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Under a plain-language reading, § 411 applies only in civil actions.

[100] Rec. Doc. 20 at pp. 2; 4.

governing the usage and distribution of the software, and that this license agreement "recognized that the software on the SDS was 'confidential, proprietary, trade secret information'" that could not be transferred, assigned, or provided  to others without Daimler AG's permission.[101] The Superseding Indictment further claims that the SDS software required users to enter a key code to unlock it.[102]

The Government has the burden of proving, beyond a reasonable doubt, that the SDS software was copyrighted. Taking these allegations as true, and remaining mindful of the Fifth Circuit's instruction that indictments are to be governed by practical, rather than technical considerations, the Court concludes that the Government has sufficiently alleged that the SDS software was an "original work[] of authorship" (Daimler AG "produced" it)  "fixed in any tangible medium of expression, from which [it] can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device" (it was installed on diagnostic devices) pursuant to 17 U.S.C. § 102(a). These allegations will allow Wittich and TBC to prepare their defense and invoke the double jeopardy clause, consistent with *Nevers* and *Hoover*. Therefore, the Superseding Indictment meets all three *Ratcliff* prongs and is constitutionally sufficient as to the charged violations of 17 U.S.C. § 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1).

---

[101] *Id.* at pp. 2–3.

[102] *Id.* at p. 3.

### 2.   Other Charges

In addition to the charges just described, the Superseding Indictment charges (3) conspiracy, in violation of 18 U.S.C. § 371, and (4) with violating 18 U.S.C. §§ 2, 2319(b)(1), and 2323(b).[103] Wittich and TBC urge the Court to dismiss the entire indictment, but have not provided specific objections to these charges. The Court therefore does not address these counts here, and denies Wittich and TBC's request to dismiss these counts of the indictment.

### C.   Whether 17 U.S.C. §§ 506(a)(1)(A) and 1201(a)(2)(A), in Omitting the Requirement that a Copyright be Registered, are Unconstitutionally Vague

Wittich and TBC also argue that 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1), in omitting the requirement that a copyright be registered in order for the Government to prosecute an alleged infringer, are unconstitutionally vague as applied to unregistered copyrights, because the statutes: (1) fail to provide individuals with notice that they may be infringing, (2) give the Department of Justice "more rights than the actual owner of a work would have in the civil arena," and (3) permit the Department of Justice to be the "sole arbiter of which unregistered works are deemed protected."[104] The Government in turn contends that the statutes are not unconstitutionally vague, because they require a "willful" mental state, which imposes upon the government the burden of proving that Wittich and TBC "intentional[ly] violat[ed] a known duty." [105] The Government further avers that Wittich and TBC's vagueness challenge is, on the present motion, limited to the

---

[103] 18 U.S.C. § 2 states that defendants who commit an offense against the United States, and those who aid, abet, counsel, command, induce, procure the commission of, or willfully cause another to commit an offense, shall be punishable as principals. 18 U.S.C. § 2319(b)(1) defines the punishments that applicable to defendants who violate 17 U.S.C. § 506(a)(1)(A). 18 U.S.C. § 2323(b) provides for forefeiture.

[104] Rec. Doc. 52 at pp. 5–6.

[105] Rec. Doc. 53 at pp. 4–7.

facts in the indictment, which sufficiently alleges that Wittich and TBC had notice that their conduct was unlawful, and willfully violated the law.[106] In light of these allegations, the Government argues, Wittich and TBC's contention that they could not have known that their conduct was prohibited presents factual issues properly reserved to the jury.[107]

"The Fifth Amendment's Due Process Clause protects against criminal convictions based on impermissibly vague statutes."[108] "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."[109] "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."[110]

Challenges as to vagueness are of two types: (1) facial challenges seeking invalidation of the statute in its entirety or (2) "as applied" challenges seeking invalidation only as applied to the facts of the case at issue.[111] The Supreme Court has stated, "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light

---

[106] *Id.* at pp. 4–8.

[107] *Id.* at p. 9.

[108] *United States v. McRae*, 702 F.3d 807, 836–37 (5th Cir. 2012).

[109] *United States v. Williams*, 553 U.S. 285, 304 (2008).

[110] *Id.* at 306.

[111] *See Steffel v. Thompson*, 415 U.S. 452 (1974).

of the facts at hand."[112] The Fifth Circuit has noted that "[a] person whose conduct is clearly proscribed by a statute cannot, however, complain that the law is vague as applied to the conduct of others."[113]

Here, Wittich and TBC contend that their vagueness challenge is an "as applied" challenge to "the [criminal copyright] statutes which all rely on the existence of a valid copyright are unconstitutionally vague in their application" to cases involving unregistered copyrights.[114] Wittich and TBC argue that, in the absence of registration, "defendants have no way to know whether their conduct was prohibited,"[115] thus raising the issue of whether Wittich and TBC could possess the requisite mental state—here, "willfulness"—to commit the alleged violations. Although 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1) do not require that a copyright be registered to establish a violation,[116] they do establish that a person must act "willfully" to commit a violation. The Government contends that "willfulness" here means "the intentional violation of a known legal duty," meaning that a person may only be prosecuted if he knew his conduct was unlawful.[117]  In *Screws v. United States*, the Supreme Court held that:

---

[112] *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

[113] *McRae*, 702 F.3d at 837.

[114] Rec. Doc. 52 at p. 3.

[115] Rec. Doc. 36–1 at p. 13.

[116]  The plain language of the criminal copyright statutes establishes that it is not necessary that a copyright be registered in order for an individual's conduct to fall within their scope. Hence the Court, notwithstanding the arguments on this point, will not read language from 17 U.S.C. § 411, the civil enforcement provision, into the criminal copyright statutes.

[117] Rec. Doc. 40 at p. 13; 15; Rec. Doc. 53 at p. 12.

24

> The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware. . .[A] requirement of a specific intent . . . made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness.[118]

Accordingly, even if the alleged copyright is not registered, Defendants could not be indicted unless the indictment alleged acts constituting willfulness, and they cannot be convicted unless the Government proves beyond a reasonable doubt they acted willfully—or with knowledge that they were violating the law. Therefore, it appears that the lack of registration alone does not necessarily make the statutes unconstitutionally vague.

However, the Government argues that the Court cannot address the Defendants' vagueness argument at this stage because it is confined to the allegations in the indictment, which must be presumed true when deciding a Rule 12 motion. In *United States v. Mann*, the Fifth Circuit, upon review of a district court's decision to dismiss an indictment of bank fraud, which involved an element of "willfulness" *mens rea*, reversed the district court because the defendants predicated their argument that the indictment was insufficient to allege an offense on evidence outside the indictment.[119] In that case, the defendant's sufficiency of the evidence defense raised factual issues, and even though the district court stated that it only relied upon undisputed, stipulated to facts of which it could take judicial notice, it necessarily relied upon evidence of facts outside the indictment

---

[118] 325 U.S. 91, 102 (1945). *See also United States v. Kirkham*, 129 Fed App'x 61, 71 (5th Cir. 2005) ("If a statute does include 'willfulness' or specific intent as an element, it will normally not be so vague as to deprive a defendant of reasonable notice that his conduct is proscribed.").

[119] 517 F.2d. 259 (5th Cir. 1975).

25

and so its dismissal of the indictment on a Rule 12 motion was inappropriate.[120] Unlike the challenge in *Mann*, Defendants here are not asserting a sufficiency of the evidence defense to the indictment which would require the Court to make factual determinations outside the indictment. "Whether a criminal statute is unconstitutionally vague is a question of law."[121] Therefore, it is proper for the Court to consider whether the indictment here states an offense against the United States as a matter of law.

As noted above, if Wittich and TBC could not ascertain whether the SDS system was copyrighted, they cannot have possessed the *mens rea* required to violate 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1), and may not be convicted. In the present motion, Wittich and TBC do not attempt to create a factual dispute as to whether they did the things alleged in the indictment. They simply argue that the Government should not be allowed to prosecute them for infringing an unregistered copyright. Accordingly, the Court is simply being asked to determine, as a matter of law, whether the absence of a registration requirement of a copyrighted work in a criminal prosecution makes the statutes unconstitutionally vague.

The Superseding Indictment here alleges facts that, taken as true, establish that Wittich and TBC knew the system was copyrighted, but nonetheless continued to reproduce and sell it, including that:

> [Wittich and TBC] paid [a programmer] to manipulate Daimler AG's proprietary SDS software to make it operate on the defendants' laptop computers without Daimler AG's authorization or license[;] . . .

---

[120] *Id*. at 265.

[121] *United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009).

[Wittich and TBC] obtained, without authorization from MBUSA or Daimler AG, updates to pre-existing versions of Mercedes-Benz proprietary software for the fake SDS units on storage media such as CDs, DVDs, and laptop computer hard drives. After receiving new software or updates, Wittich instructed employees of TBC to make copies of the discs and share them with Company A and Company B. . .

[A]fter Daimler AG altered its proprietary SDS software or enhanced security measures in an attempt to protect its software from "cracks," WITTICH, TBC, Company A and Company B would work with [a programmer] to overcome the additional safety measures so that they could continue to manufacture and sell the SDS units.

[Wittich] discussed via e-mail a plan to have [a programmer] "go underground and off the radar" and continue providing assistance and support in the production of fake SDS units.

Even after federal agents searched TBC's facilities on July 13, 2012, Wittich and TBC purchased not fewer than 71 units of software and components over at least 14 occasions for the purpose of manufacturing, distributing, and selling fake SDS units and software updates for fake SDS units. Similarly, even after federal agents provided Wittich with a detailed description of their investigation on September 26, 2013, Wittich and TBC still purchased software and components for the production and distribution of fake SDS units.[122]

Even absent registration (which Defendants seem to argue would create a presumption that a copyright has been infringed),[123] the statute clearly defines what a copyright is. Moreover 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1) describe, in plain language, what conduct is necessary to constitute a violation. Since the statutes clearly define what conduct is proscribed, they do not, "encourage arbitrary and discriminatory enforcement." Finally, recognizing that 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1) establish a *mens rea* requirement that includes notice, the Court finds that the statutes "define the criminal offense with sufficient

---

[122] Rec. Doc. 36 at pp. 6–8.

[123] *See* 17 U.S.C. § 418(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

definiteness that ordinary people" —including Wittich and TBC, under the alleged facts of the present case—"can understand what conduct is prohibited."

Turning to the second ground for vagueness, the Court finds that willful conduct provides a clear standard for enforcement. The Fifth Circuit, in *United States v. Escalante*, examining a statute where negligence was an element, found that the law did not lack "'minimal guidelines' to prevent arbitrary enforcement."[124] The court stated that the statute did "not empower the police to punish whatever conduct they chose" because the statute only applied to negligent conduct.[125] Similarly, the copyright statutes only criminalize willful infringement of a copyright done for purposes of commercial advantage. Accordingly, the Court finds that the statutes do not lack minimal guidelines to prevent arbitrary enforcement. Based upon the foregoing, as a matter of law, the Court finds that the statutes are not unconstitutionally vague as applied in the instant case.

## IV. Conclusion

The plain language of 17 U.S.C. §§ 102, 408, 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1) establish that copyright protection may attach to a work regardless of whether a copyright is registered. These statutes also provide that actions for criminal copyright infringement do not require that the copyright at issue be registered. Since the Government has alleged that the SDS system falls within the scope of 17 U.S.C. § 102, it has alleged the existence of a copyright, and need do no more to state an offense. On the present pre-trial motion, the indictment, as a matter of law, states offenses pursuant to 17 U.S.C. §§ 506(a)(1)(A), 1201(a)(2)(A) and 1204(a)(1). These statutes are

---

[124] 239 F.3d 678, 680 (5th Cir. 2001).

[125] *Id.*

28

not unconstitutionally vague simply because they do not require registration of the copyrighted work. Further, the Court finds no basis to dismiss the indictment on any of the other grounds asserted by Wittich and TBC. Accordingly,

It is **ORDERED** that Defendants Rainer Wittich and The Brinson Company's "Motion to Dismiss"[126] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this ___10th___ day of October, 2014.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[126]Rec. Doc. 36.