**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-35** |
| **RAINER WITTICH** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Defendants Rainer Wittich ("Wittich") and The Brinson Company's ("TBC") "Motion to Suppress Statement."[1] Having considered the pending motion, the memorandum in support, the memorandum in opposition, the record testimony and the applicable law, the Court will grant the pending motion.

## I. Background

### A. Procedural Background

On February 13, 2014, a grand jury indicted Wittich and TBC on charges of conspiracy, copyright infringement, trafficking in technology designed to circumvent copyright protection systems, and circumventing a technological measure that protects a copyrighted work.[2] On May 29, 2014, a grand jury authorized a superseding indictment.[3] On October 2, 2014, Wittich and TBC were charged in a 9-count second superseding indictment with conspiracy, copyright infringement, circumvention of technological measures effectively controlling access to copyrighted works,

---

[1] Rec. Doc. 60.

[2] Rec. Doc. 1.

[3] Rec. Doc. 20.

conspiracy to commit international money laundering and trafficking in technology designed to circumvent copyright protection systems.[4]

On September 26, 2014, Defendants filed the instant motion to suppress Wittich's July 13, 2012 statement.[5] The Court conducted an evidentiary hearing and heard oral argument on the motion on October 16, 2014. FBI agent Sundanah Parsons ("Parsons") and Michele Wittich ("Mrs. Wittich") testified.

**B. Factual Background**

On the morning of July 13, 2012, FBI agents conducted a search of TBC's facility pursuant to a search warrant.[6] Parsons, the case agent, and 10 to 15 other agents executed the search.[7] The agents wore bullet-proof vests, and carried weapons.[8] Local law enforcement was also at the scene.[9] Parsons testified that he had conducted surveillance of TBC and Wittich's home on approximately five occasions before execution of the warrant.[10]

Wittich was not present at TBC on the morning of the search because he had undergone surgery on July 3, 2012, to remove his prostate due to prostate cancer. Parsons testified that he asked

---

[4] Rec. Doc. 70.

[5] Rec. Doc. 60.

[6] Rec. Doc. 88 at 5. During the hearing, Parsons admitted that the search warrant affidavit he signed cited language related to child pornography. *Id*. at 50. Parsons admitted that child pornography was not an issue in this case. *Id*. Although defense counsel presented this discrepancy in the evidentiary hearing, he failed to argue how this issue relates to the present motion. Nevertheless, the Court notes that it reflects a lack of attention to detail evident throughout the execution of the procedures necessary to complete the investigation at issue here.

[7] *Id*. at 11, 34. Parsons testified that he employed additional agents during the search of TBC due to the size of warehouse and because it was a document intensive case. *Id*. at 35–36.

[8] *Id*. at 12.

[9] *Id*. at 34.

[10] *Id*. at 7, 40.

FBI Agents Wood and Soyez to go to Wittich's home to notify him of the search and ask if he wanted to go to TBC to speak to Parsons.[11] Parsons stated that Wood and Soyez would not have been able to interview Wittich at his home because they did not know the facts of the case.[12] Parsons testified that his expectation was that Wittich would want to come to TBC to speak to him.[13]

Mrs. Wittich testified that two FBI agents came to her home on the morning of July 13, 2012, asking to speak to her husband.[14] She informed the agents that Wittich had major surgery on July 3, 2012.[15] Wittich was taking Percocet following the surgery,[16] which Mrs. Wittich testified made him drowsy and caused him to lose any concept of time.[17] Wittich was using a catheter and drainage bag.[18]  She also testified that Wittich asked the agents if she could drive him to TBC, but the agents stated that they were required to take him.[19] Mrs. Wittich testified that she had to help Wittich get dressed so that he could leave with the agents.[20]

---

[11] *Id.* at 13–16, 25–26.  Parsons testified he was not aware of Wittich's surgery. *Id.* at 18.

[12] *Id.* at 16, 25.

[13] *Id.* at 32.

[14] Rec. Doc. 87 at 3–4. The FBI did not have a search warrant for Wittich's home. Rec. Doc. 88 at 14.

[15] Rec. Doc. 87 at 4.

[16] *Id.* at 5.

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.* at 7. Parsons testified that he spoke to Wood and Soyez prior to testifying in Court on October 16, 2014, and they indicated that they could not remember if they drove Wittich to TBC. Rec. Doc. 88 at 17, 27. Neither Wood nor Soyez completed a report. *Id.* at 27.

[20] Rec. Doc. 87 at 8.

When Wittich arrived at TBC, Parsons and Agent Robert Blythe ("Blythe") brought Wittich into his office,[21] separate from the other employees who were confined to a conference room.[22] Parsons stated that the interview was conducted with standard techniques. According to Parsons, Wittich indicated that the medication was not affecting his memory.[23] Parsons testified that he asked his home address, social security number and date of birth to confirm Wittich's statement.[24] Parsons testified that the interview lasted 20 to 30 minutes,[25] but the Form 302 does not state the length of the interview.[26] At some point, Wittich's attorney, Brian Capitelli, arrived at the scene after being contacted by Mrs. Wittich,[27] and he remained on the scene with Wittich until the end of the search.[28]

Mrs. Wittich testified that later that day she tried to bring Wittich's pain medication to TBC.[29] She stated that an FBI agent told her that if she went inside, she would have to stay at TBC until the end of the search.[30] Mrs. Wittich testified that she did not want to go inside because she

---

[21] Rec. Doc. 88 at 44.

[22] *Id.* at 20–21. Parsons testified that during the search the TBC employees were notified that they were free to leave, but if they wanted to stay they must stay in the conference room. *Id.* at 20.

[23] *Id.* at 45.

[24] *Id.* at 46.

[25] *Id.* at 46–47.

[26] *Id.* at 57.

[27] Rec. Doc. 87 at 9. Mrs. Wittich testified she had not met Brian Capitelli before. *Id.*  She contacted Capitelli because she believed Wittich was under arrest. *Id.*

[28] Rec. Doc. 88 at 49.

[29] *Id.* at 10.

[30] *Id.*

thought she might have to bail her husband out of jail, so the FBI agent indicated that she would give the medication to Wittich.[31]

## II. Parties' Arguments

### A. Defendants' "Motion to Suppress Statement"

Defendants urge this Court to suppress the July 13, 2012 statement.[32] They argue that the "totality of the circumstances" indicate that Wittich was "in custody" at the time of the statement.[33] They point to the following facts to support their assertion:

> Mr. Wittich was recovering from a very significant surgery, was taken from his home while still under the affects of serious pain medications and with a catheter in place, and taken to his office where more than a dozen federal agents in bullet proof vests carrying weapons were searching his office. Once he arrived there, he was not allowed to leave and was separated from his employees.[34]

Accordingly, they argue that because Wittich was not given a *Miranda* warning the statement should be suppressed.[35]

### B. The Government's Opposition

The Government argues that Wittich's statement should not be suppressed because he "was not under arrest, and he provided the statement voluntarily, at a place of his choosing, after refusing to leave Brinson during the execution of the search warrant."[36] The Government contends that

---

[31] *Id.*

[32] Rec. Doc. 60.

[33] Rec. Doc. 60-1 at 4 (citing *United States v. Cavazos*, 668 F.3d 190 (5th Cir. 2012)).

[34] *Id.* at 4.

[35] *Id.*

[36] Rec. Doc. 75 at 10 (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006)).

Wittich was not "in custody" when he provided a statement to federal agents on July 13, 2012.[37]  The Government asserts, "Wittich insisted that he go to Brinson while the search warrant was being executed, and he refused to leave until it was over."[38]  The Government argues that Wittich was advised multiple times that he was not under arrest and that he could terminate the interview and leave the premises at any time.[39]  The Government asserts Wittich voluntarily concluded the interview and "steadfastly insisted on remaining at Brinson until the search was complete."[40]  Accordingly, the Government argues that "no evidence exists to suggest that the agents' behavior was so coercive that a reasonable person would have felt he was under arrest."[41]

### III. Law and Analysis

#### A. Applicable Law

"*Miranda* warnings must be administered prior to 'custodial interrogation.'"[42] However, law enforcement officials need not advise a defendant of his *Miranda* rights where he voluntarily gives a statement in a non-custodial situation.[43] A suspect is "in custody" for *Miranda* purposes "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the

---

[37] *Id.* at 12.

[38] *Id.*

[39] *Id.* at 12–13.

[40] *Id.* at 13.

[41] *Id.*

[42] *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir.1988) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

[43] *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

6

law associates with formal arrest."[44] "Two discrete inquires are essential to the [custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave."[45] The reasonable person through whom the Court must view this situation must be "a person who is neutral to the purposes of the investigation-that is, neither guilty of criminal conduct and overly apprehensive nor insensitive to the seriousness of the circumstances."[46] "A determination of whether a defendant is 'in custody' for Miranda purposes depends on the 'totality of circumstances.'"[47]

Here, it is undisputed that Wittich was not under formal arrest when he gave the July 13, 2012 statement. Therefore, the custody inquiry hinges on whether Wittich's freedom "was restrained to such a degree as to constitute a *de facto* arrest."[48] In *United States v. Cavazos*, the Fifth Circuit found that the totality of circumstances indicated that Cavazos was in custody where:

> Just after 5:30 a.m., Cavazos was awakened from his bed, identified and handcuffed, while more than a dozen officers entered and searched his home; he was separated from his family and interrogated by two federal agents for at least an hour; he was informed he was free to use the bathroom or get a snack, but followed and monitored when he sought to do so; and he was allowed to make a phone call, but only when holding the phone so that the agents could overhear the conversation. An interrogation under such circumstances, and those others discussed above, would lead a reasonable person to believe that he was not at liberty to terminate the

---

[44] *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *Bengivenga*, 845 F.2d at 596)).

[45] *Id.* (quoting *J.D.B. v. N. Carolina*, — U.S. —, 131 S.Ct. 2394, 2402 (2011)).

[46] *Bengivenga*, 845 F.2d at 596.

[47] *Cavazos*, 668 F.3d at 193 (quoting *Berkemer v. McCarty*, 463 U.S. 1121, 1125 (1983)).

[48] *United States v. Collins*, 972 F.2d 1385, 1405 (5th Cir. 1992).

interrogation and leave, notwithstanding the fact that the interrogation occurred in his home and he was informed the interrogation was non-custodial.[49]

In *United States v. Cumberland*, the Fifth Circuit found that a interview was non-custodial where the defendant "met with agents at a public park; he drove himself to and from the meeting; he was not told by the agents that he was not free to leave; he was not coerced by the agents, and his movements were not restricted; the agents were not in uniform and did not display their weapons; and at the end of the interview, the agents left Cumberland at the park."[50]

The Government cites *United States v. Texas Oil and Gathering, Inc.*, in which a district court denied a Motion to Suppress statements made by the president of the defendant company at his place of business during the execution of a search warrant.[51] The district court relied on the following facts in determining that the interview was non-custodial: (1) "while witnesses testified that they felt they could not leave because an agent was at the gate, no witness testified that he personally had been prevented from leaving, or that he saw another employee prevented from leaving;"[52] (2) while the search team consisted of sixteen armed officers, the president was questioned by only two law enforcement officials;[53] (3) while some agents wore uniforms and were armed, there was no credible evidence indicating that the law enforcement personnel's behavior was so coercive that a reasonable person would have felt he was under arrest;[54] (4) while the interview

---

[49] *Cavazos*, 668 F.3d at 194 (internal citations and quotation marks omitted).

[50] 359 F. App'x 519, 520 (5th Cir. 2010).

[51] *United States v. Texas Oil and Gathering, Inc.*, Case No. 07-466 (S.D. Tex. Mar. 20, 2009).

[52] *Id.* at *3.

[53] *Id.* at *2, 4.

[54] *Id.* at *4.

8

took place in a closed room, it was conducted at a business rather than a police station;[55] (5) the president had access to his cell phone during the interview and could have called a lawyer.[56]

## B. Analysis

The Government cites a number of factors to support a finding that Wittich was not "in custody:" (1) Wittich insisted on going to TBC while the search warrant was being executed and refused to leave until after the search was over; (2) Wittich was advised that any statement he might make was voluntary; and (3) Wittich was advised that he could terminate the interview and leave the premises at any time. None of these facts alone are dispositive of the issue, as the Court must consider the totality of the circumstances. Further, the Court finds the Government's argument that Wittich insisted on going to TBC while the search was being executed is not supported by the evidence.

Although the Government states that Wittich insisted on going to TBC, the Court takes particular note of Mrs. Wittich's uncontradicted testimony that FBI Agents Wood and Soyez arrived at their home at about 8:30 a.m. on July 13, 2012, asking to talk to her husband. When asked why she did not tell the agents that Wittich could not talk to them because he was recovering from surgery, Mrs. Wittich testified she did not know that not talking to the agents was an option.[57] Mrs. Wittich testified that she had to help Wittich get dressed so that he could leave with them, and they would not allow her to drive Wittich to TBC. Instead, the agents indicated that they were required to take him. Parsons testified that he sent the two agents to Wittich's home, who were not familiar

---

[55] *Id.*

[56] *Id.*

[57] Rec. Doc. 87 at 13–14.

9

with the case, while he was conducting the search and expected that Wittich would want to go to TBC and provide a statement to him. Unlike the president of the defendant company in *United States v. Texas Oil and Gathering, Inc.*, Wittich was brought to TBC for the specific purpose of making a statement. This case is also distinguishable from *United States v. Cumberland*, where the defendant was allowed to drive himself to the interview.

The Government argues that after arriving at TBC, Wittich was informed that he was free to leave at any time. However, the Government ignores the fact that Wittich had no way of leaving because the agents had transported him to TBC, despite his request that his wife drive him. Mrs. Wittich also testified that she believed Wittich was under arrest. Although the Government argues that Wittich insisted on going to TBC, the evidence presented indicates that the agents were sent to his home to get him so that he could provide Agent Parsons with a statement.

Wittich was recovering from a major surgery, removal of his prostate due to prostate cancer, and was taking Percocet, which his wife testified made him drowsy and caused him to lose any concept of time. Mrs. Wittich also testified that when he did not take his medication on time he was in a lot of pain. The parties do not address whether Wittich's medication usage may have affected his ability to understand and process Parsons's statement that he was free to leave, or whether he understood what Parsons meant when he told Wittich that his statement was voluntary—even after having sent two agents to his home to retrieve him so that he could make such a statement.[58] Further,

[58] The Court notes that Defendants do not raise the issue of whether Wittich's statement was voluntary. "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Scurlock*, 52 F.3d 531, 536 (5th Cir. 1995). "To be considered voluntary, a confession cannot be the product of official overreaching in the form either of direct coercion or subtle forms of psychological persuasion." *Id*. In *United States v. Raymer*, the Fifth Circuit addressed the voluntariness of a defendant's waiver of his *Miranda* rights. The Fifth Circuit noted that following the Supreme Court's decision in *Colorado v. Connelly*, the relevant test for voluntariness is the presence or absence of police coercion, rather than a test focused on the defendant's free will. 876 F.2d 383, 386 (5th Cir. 1989) (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)). However, the court noted that "a defendant's mental condition still properly figures into the

as a practical matter, Wittich may not have been able to leave despite what Parsons told him. Moreover, even if he called someone to come to TBC to get him, based on the uncontroverted testimony of Mrs. Wittich, once arriving on the premises anyone arriving to take him home would have been told that they would not be allowed to leave, a likely deterrent to anyone he might have called. In fact, Mrs. Wittich was told when she brought the medication that if she entered the building she would not be allowed to leave until the end of the search. Therefore, the Court finds this case distinguishable from *United States v. Texas Oil and Gathering, Inc.*, where there was no testimony that employees were prevented from leaving the premises. Moreover, Parsons testified that he was never told that Mrs. Wittich had left any medication for Wittich[59] and therefore, Wittich was never informed that she was there. If Wittich had been told that she was there, perhaps he would have tried to leave.

The Government does not dispute that when Wittich arrived at TBC there were more than a dozen federal agents in bullet proof vests carrying weapons, conducting the search. When Wittich was brought to TBC by the federal agents, he was separated from the other employees. This environment, coupled with the agents' insistence that they transport Wittich to TBC, Wittich's inability to leave on his own due to his medical condition and lack of transportation, Mrs. Wittich's uncontrovereted statement that no one would be allowed to leave while the search was being conducted and the agents/law enforcement's failure to inform Wittich that his wife was on the premises or give him the pain medication she left for him, would have led a reasonable person to

---

voluntariness calculus," as the court must analyze whether any police exploitation of the mental condition of the defendant occurred. *Id.* Wittich's medication usage, coupled with the coercive actions by law enforcement at his home could support a finding that his statement was not voluntary.

[59] Rec. Doc. 88 at 31.

believe he was under arrest. While Wittich was not physically handcuffed like the defendant in *United States v. Cavazos*, the totality of the circumstances shows that Wittich was not in fact free to leave.

Based on the foregoing, the Court finds that an interrogation under these circumstances would lead a reasonable person to believe that he was not at liberty to terminate the interrogation and leave, notwithstanding the fact that the interrogation occurred at his place of business and he was informed that the interrogation was non-custodial. Accordingly, the Court finds that the totality of the circumstances indicate that Wittich was in custody at the time of his statement, and his statement should be suppressed because he was not given a *Miranda* warning.

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants Rainer Wittich and The Brinson Company's "Motion to Suppress Statement"[60] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this ___23rd___ day of October, 2014.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[60] Rec. Doc. 60.