UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-35** |
| **RAINER WITTICH** | **SECTION: "G"(4)** |

### ORDER AND REASONS

Before the Court is Defendants Rainer Wittich ("Wittich") and The Brinson Company's ("TBC") "Motion to Strike Surplusage."[1] Having considered the pending motion, the memorandum in support, the memorandum in opposition, the record testimony and the applicable law, the Court will grant-in-part and deny-in-part the pending motion.

### I. Background

On February 13, 2014, a grand jury indicted Wittich and TBC on charges of conspiracy, copyright infringement, trafficking in technology designed to circumvent copyright protection systems, and circumventing a technological measure that protects a copyrighted work.[2] On May 29, 2014, a grand jury authorized a superseding indictment.[3] On October 2, 2014, Wittich and TBC were charged in a 9-count second superseding indictment with conspiracy, copyright infringement, circumvention of technological measures effectively controlling access to copyrighted works, conspiracy to commit international money laundering and trafficking in technology designed to circumvent copyright protection systems.[4]

---

[1] Rec. Doc. 59.

[2] Rec. Doc. 1.

[3] Rec. Doc. 20.

[4] Rec. Doc. 70.

On September 26, 2014, Defendants filed the instant motion to exclude evidence of plea discussions that occurred on September 26, 2013.[5] The Court heard oral argument on the motion on October 16, 2014.

## II. Parties' Arguments

*A. Defendants' "Motion to Strike Surplusage"*

Defendants argue that the following language should be stricken from the Superseding Indictment:

1) Any reference to or use of the term "fake";

2) "The use of non-authentic or unauthorized SDS units increased the risk of Mercedes-Benz automobiles being stolen or suffering from misdiagnosed or undiagnosed problems";

3) "On [sic] about September 26, 2013, WITTICH and his counsel met with Special Agents from the Federal Bureau of Investigation. During the meeting, FBI agents detailed the nature of their investigation and presented numerous documents obtained throughout the investigation."[6]

Defendants argue that these items should be stricken from the Superseding Indictment under Federal Rule of Criminal Procedure 7(d).[7] Defendants contend that district courts can strike surplusage from an indictment if the inflammatory and prejudicial language "serve[s] only to inflame the jury, confuse the issues, and blur elements necessary for conviction[.]"[8] They assert that courts can also

---

[5] Rec. Doc. 59.

[6] Rec. Doc. 59-1 at 1–2.

[7] *Id*. at 2.

[8] *Id*. at 2–3 (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).

strike "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language[.]"[9]

Defendants argue that the term "fake," as used by the Government to modify the term "SDS units," is "highly prejudicial and self serving."[10] They state, "This prejudicial language is essentially the very fact that the government must prove here."[11] They assert that "such a generic descriptive phrase by its very nature creates the impression that the product is unlawful.[12]

Defendants contend that the stolen vehicle language is not relevant to the elements of the crime.[13] They assert that the language is irrelevant and prejudicial, and maintain that the Government has no evidence to support the allegation.[14]

Defendants assert that any reference to the September meeting with the Government should be stricken.[15] They argue that this was a meeting intended to potentially secure a plea by the government, asserting that plea discussions are inadmissible.[16]

---

[9] *Id.* at 3 (citing *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953)).

[10] *Id.*

[11] *Id.*

[12] *Id.* at 4.

[13] *Id.* at 5.

[14] *Id.*

[15] *Id.*

[16] *Id.*

*B. The Government's Opposition*

The Government argues that Defendants concede the relevance of the term "fake."[17] They assert that "it makes no difference whether the term is prejudicial, much less the extent to which it is prejudicial."[18] They state, "To the extent defendants suggest that the term 'fake' is argumentative, or that they disagree with that characterization of their SDS version, that is entirely the purpose of a charging document and the reason this matter is headed for trial."[19] Accordingly, they argue that the term "fake" is not surplusage.[20]

The Government contends that the stolen vehicle paragraph is relevant because it intends to present evidence that Defendants disabled a "timeout" feature on the SDS software, which Mercedes created to assure that SDS units were regularly updated.[21] The Government asserts that purchasers of the "fake" SDS units were likely to mis-diagnose car problems, including problems with the anti-theft systems, because they were not required to regularly update the software.[22] The Government argues that disabling the "timeout" feature is relevant "to show that they were making copies of genuine copyrighted Mercedes software" and "to demonstrate their willfulness in making and distributing infringing copies of the software."[23] Finally, the Government argues that even if the

---

[17] Rec. Doc. 75 at 8.

[18] *Id.*

[19] *Id.* at 8–9.

[20] *Id.* at 9.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 9–10.

4

Case 2:14-cr-00035-NJB-KWR Document 93 Filed 10/31/14 Page 5 of 8

language is surplusage, "it should not be stricken because it neither broadens the charge nor misleads the defendants."[24]

### III. Law and Analysis

*A. Federal Rule of Criminal Procedure 7(d)*

Allegations in an indictment that are unnecessary to prove the crime charged are surplusage.[25] Federal Rule of Criminal Procedure 7(d) provides that "upon the defendants motion, the Court may strike surplusage from the indictment or information." However, the striking of surplusage is not required as "[s]urplusage in the indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."[26] The level of proof required to strike surplusage from an indictment is "exacting."[27]

"For language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial."[28] A court may strike as prejudicial "[t]he inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved."[29] However, "[w]here information in an indictment is sufficiently relevant to the charged offense, the court should not strike it, no matter how prejudicial it may be."[30]

---

[24] *Id.* at 10 (citing *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir.1989)).

[25] *United States v. Miller*, 410 U.S. 130, 136–37 (1985).

[26] *See Quintero*, 872 F.2d at 111 (citing *United States v. Trice*, 823 F.2d 80, 89 n. 8 (5th Cir.1987)).

[27] *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

[28] *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993).

[29] *Bullock*, 451 F.2d at 888.

[30] *United States v. Solomon*, 273 F.3d 1108, 2001 WL 1131955 (5th Cir. 2001).

*B. Use of the Term "Fake"*

Defendants argue that the term "fake," as used to modify the term "SDS unit," is inflammatory and prejudicial. At oral argument, Defendants asserted that the term was irrelevant because it is not accurate. They contend that the terms "unlicensed" and "unauthorized" more accurately describes the SDS units. At oral argument, the Government argued that the terms proposed by Defendants were not accurate.

Defendants cite *United States v. Reece*, where the district court struck the term "synthetic cannabinoids" from certain sections of the indictment, where a more specific chemical substance could be substituted for the generic term.[31] The court found that, while the description was accurate and relevant, there are places in the indictment where use of the term confused the issues and the more precise chemical term could easily be substituted in its place.[32]

Counts 2 and 3 of the Superseding Indictment charge Defendants with infringing on a copyrighted work. To establish a violation of 17 U.S.C. § 506(a)(1)(A), the Government must prove that a defendant (1) willfully (2) infringed a copyright (3) for purposes of commercial advantage or private financial gain. The term "fake" is relevant to the charged offenses because the Government argues that Defendants infringed on a copyright by reproducing and distributing "fake" SDS units. Defendants have not shown how the use of the term "fake" will inflame the jury or confuse the issues. Accordingly, the Court will not strike the term "fake" from the indictment because it is sufficiently relevant to the charged offenses.

---

[31] Crim. Action No. 12-146 *2 (W.D. La. Jul. 1, 2013).

[32] *Id.*

*C. Language Related to Stolen Vehicles*

Defendants object to paragraph eight of the Superseding Indictment, which states, "The use of non-authentic and unauthorized SDS units increased the risk of Mercedes-Benz automobiles being stolen or suffering from misdiagnosed or undiagnosed problems."[33] The Government asserts that Defendants were disabling a "timeout" on the SDS software, which Mercedes created to assure that SDS units were regularly updated. The Government asserts that purchasers of the "fake" SDS units were likely to mis-diagnose car problems, including problems with the anti-theft systems, because they were not required to regularly update the software. It argues that disabling the "timeout" feature is relevant to show that Defendants were making copies of the software and to demonstrate their willfulness. While disabling the "timeout" feature is relevant, the Government has not shown how the stolen vehicle language is relevant to the offenses. The Court finds that inclusion of this clearly unnecessary language could serve only to inflame the jury and confuse the issues. Accordingly, the Court will strike this irrelevant, inflammatory, and prejudicial language from the indictment.

*D. Reference to the September 26, 2013 Meeting*

Finally, Defendants object to paragraph 10 of the Superseding Indictment, which states, "On about September 26, 2013, WITTICH and his counsel met with Special Agents from the Federal Bureau of Investigation. During the meeting, FBI agents detailed the nature of their investigation and presented numerous documents obtained throughout the investigation."[34] In its prior Order, the Court determined that evidence related to the September 26, 2013 meeting should be excluded

---

[33] Rec. Doc. 20 at 3.

[34] *Id.*

7

because it would cause unfair prejudice, confuse the issues and mislead the jury. Accordingly, the Court will strike this irrelevant, inflammatory, and prejudicial language from the indictment.

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants Rainer Wittich and The Brinson Company's "Motion to Strike Surplusage"[35] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the term "fake" shall not be stricken from the indictment.

**IT IS FURTHER ORDERED** that the following language shall be stricken from the indictment: (1) "The use of non-authentic and unauthorized SDS units increased the risk of Mercedes-Benz automobiles being stolen or suffering from misdiagnosed or undiagnosed problems" and (2) "On about September 26, 2013, WITTICH and his counsel met with Special Agents from the Federal Bureau of Investigation. During the meeting, FBI agents detailed the nature of their investigation and presented numerous documents obtained throughout the investigation."

**NEW ORLEANS, LOUISIANA**, this ___31st___ day of October, 2014.

                                                    **NANNETTE JOLIVETTE BROWN**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[35] Rec. Doc. 58.